### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALAN McCRAY, # K-52575, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-cv-01036-MJR |
| ) | |
| KIMBERLY BUTLER, ) | |
| STEVEN RICHARD, ) | |
| KENT BROOKMAN, ) | |
| JASON HART, ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| TROST, ) | |
| GAIL WALLS, ) | |
| SALVADOR GODINEZ, ) | |
| DONALD STOLWORTHY, ) | |
| JOHN DOE 1, ) | |
| JOHN DOE 2, ) | |
| JOHN DOE 3, ) | |
| and JANE DOE 1, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff Alan McCray, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 (Doc. 1). In his complaint, Plaintiff claims that Menard officials violated his rights under the First, Eighth, and Fourteenth Amendments (Doc. 1, pp. 1-35). He also brings a claim under Illinois state law against one of these officials for intentional infliction of emotional distress (*id*. at 24-25). Plaintiff seeks monetary damages and a prison transfer (*id*. at 36).

### Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner

complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

## Complaint

The complaint is unnecessarily long, unfocused, and confusing (Doc. 1, pp. 1-36; Doc. 1-1, pp. 1-48). This style of pleading is strongly discouraged by the Court and by the Federal Rules of Civil Procedure, which both require "**a short and plain statement of the claim** showing that the pleader is entitled to relief." *See* FED. R. CIV. P. 8(a)(2) (emphasis added). Long complaints are difficult to decipher and even more difficult to answer. As a result, they are more likely than short complaints to be dismissed for violating the Court's local rules and the Federal Rules of Civil Procedure. When it comes to preparing a complaint, "short and simple" is the rule of thumb.

Under the circumstances, the Court has done its best to organize the factual allegations in the complaint into a coherent summary. Likewise, the Court has included a discussion of all claims it could identify in Plaintiff's complaint. Any claims not discussed herein are considered dismissed without prejudice, as are claims against individuals who are not named as defendants in the case caption of the complaint. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

According to the complaint, Plaintiff was disciplined in 2012 for assaulting a correctional officer at Menard (Doc. 1, p. 5).  He transferred to another facility before returning to Menard in 2014 (*id*.).  Following his return, Plaintiff claims that prison officials violated his constitutional rights in retaliation for the prior staff assault by subjecting him to the unauthorized use of force in violation of the Eighth Amendment, unconstitutional conditions of confinement in violation of the Eighth Amendment, inadequate medical care in violation of the Eighth Amendment, the deprivation of a protected liberty interest without due process of law in violation of the Fourteenth Amendment, and the denial of court access in violation of the First and Fourteenth Amendments (*id*.).  A summary of the allegations offered in support of each claim is set forth below.

1. **Excessive Force**

When Plaintiff arrived at Menard on September 24, 2014, Lieutenant Richard asked him if he was returning to the prison (Doc. 1, pp. 5-7).  Plaintiff indicated that he was (*id*. at 5).  Lieutenant Richard then handcuffed Plaintiff so tightly that he lost circulation in his hands as the lieutenant escorted Plaintiff directly to segregation.  When Plaintiff asked the lieutenant why he was "doing that to him," Lieutenant Richard said that he knew what Plaintiff "had done" (*id*. at 6).  Plaintiff asked the lieutenant to loosen the cuffs, and, in response, Lieutenant Richard choked Plaintiff, twisted his handcuffs, and "snatched" him up into the air.  This caused Plaintiff to scream out in pain.  He suffered from soreness and scratches to his neck and wrists as a result of the incident (*id*. at 6-7).  He was denied medical treatment for these injuries.  Plaintiff claims that the use of force against him was excessive and caused him to suffer from emotional distress.

### 2.     Disciplinary Ticket and Hearing

Lieutenant Richard then issued Plaintiff a false disciplinary ticket for yelling at other inmates while standing in line (Doc. 1, pp. 7-13).  Warden Butler appointed no one to investigate the charges, although C/O John Doe 1 signed a statement indicating that he did (*id*. at 9-10; Doc. 1-1, p. 3).  At Plaintiff's adjustment committee hearing on September 29, 2014, C/O Brookman and C/O Hart denied his request to call two witnesses (Doc. 1, pp. 9-11).  The adjustment committee instead accepted the unchallenged statement of Lieutenant Richard and found Plaintiff guilty of the rule violation.  Plaintiff was punished with three months of segregation, demotion to C-grade, and commissary restriction (Doc. 1-1, p. 3).

On the final hearing summary, C/O Brookman and C/O Hart falsely stated that Plaintiff never requested witnesses at his hearing (Doc. 1, p. 11).  Warden Butler, Director Godinez, and Ex-Director Stolworthy are generally aware of this practice at Menard (*id*. at 11-13).  However, they took no action to stop it in Plaintiff's case.

### 3.     Conditions of Confinement

As punishment, Plaintiff was placed in segregation for three months (Doc. 1, pp. 16-24). He was housed in a filthy, "condemned cell" (*id*. at 16).  There were hairballs on the floor and feces and blood smeared across the walls (*id*. at 17-18).  Ants and flies infested the cell.  When Plaintiff asked Lieutenant Richard and an officer in the North-2 Cell House for cleaning supplies, both individuals denied his request (*id*. at 17).

Plaintiff was also denied a mattress, sheets, and a pillow (*id*. at 18-19).  He had to sleep on a steel bed, which caused him to suffer back pain (*id*. at 19-20).  In addition, he was denied access to his fan as temperatures outside soared (*id*. at 19).

The cell lacked running water, a working toilet, and toilet paper (*id*. at 16-24).  Plaintiff's lack of access to drinking water caused him to experience symptoms of dehydration, including dark urine, headaches, and muscle cramping (*id*. at 20).  Because Plaintiff had no access to his personal property, he also had no personal hygiene supplies (*id*. at 17-18).  Plaintiff claims that Warden Butler, Director Godinez, and Ex-Director Stolworthy were generally aware of the conditions at Menard because of a report issued by the John Howard Association, but they took no action to address the conditions in Plaintiff's cell (*id*. at 17, 23).

**4.     Denial of Access to Courts**

Plaintiff alleges that he was unable to exhaust his administrative remedies and file suit because the prison's mailroom was understaffed (Doc. 1, pp. 13-16).  As a result, his grievances were not delivered to the intended recipients or returned to him.  His mail was often delayed or lost.

Grievance Officer John Doe 2, Mailroom Supervisor John Doe 3, Warden Butler, Director Godinez, and Ex-Director Stolworthy were generally aware of these issues but took no steps to address them (*id*. at 14-15).  Further, Warden Butler, Director Godinez, and Ex-Director Stolworthy refused to provide timely responses to the grievances that Plaintiff filed to address the constitutional deprivations described in his complaint (*id*. at 16).

**5.     Denial of Medical Care**

Scattered throughout Plaintiff's complaint are allegations that various defendants denied his miscellaneous requests for medical treatment.  For example, Plaintiff alleges that Lieutenant Richard denied his request for medical care for a sore and scratched neck and wrists after the lieutenant used excessive force against him on September 24, 2014 (*id*. at 25-26).

Nurse Jane Doe also denied Plaintiff medical care for his neck pain, scratches, and dehydration. In addition, he asked her to treat residual pain in his leg and foot that was associated with an old gunshot wound (*id.* at 31). She simply told Plaintiff that there was not much that she could do and discouraged him from filing more sick call requests and grievances. Nurse Doe explained that Wexford would not authorize treatment of old injuries or refer him to an outside provider for expensive diagnostic testing (*id.* at 31-33). At most, Nurse Doe predicted that Plaintiff would receive nonprescription pain medication to treat his pain (*id.* at 32). Plaintiff continued filing grievances and was finally seen by an unnamed individual on February 7, 2016. Just as the nurse warned, Plaintiff's requests for a referral, diagnostic testing, and pain medication were denied.

Plaintiff spoke with several other unnamed officers who were assigned to his gallery and asked them for medical treatment. They also refused his request for treatment. He stopped several unidentified nurses who were passing out medication and reported his injuries. The nurses also declined to treat Plaintiff (*id.* at 20, 26).

Warden Butler allegedly ignored emergency grievance filed by Plaintiff (*id.* at 26, 28). In them, Plaintiff described the injuries he suffered when Lieutenant Richard used excessive force against him. He also described his symptoms of dehydration that resulted from his placement in a cell without running water in late 2014 (*id.* at 28). He asked for medical treatment, but alleges that the warden denied or ignored his grievances (*id.*).

Similarly, Plaintiff alleges that he "alerted" Director Godinez, Doctor Trost, and HCU Administrator Walls about the denial of medical care, and they "turned a blind eye to his complaints" (*id.* at 28-31).

Wexford's policy, custom, or practice of elevating cost concerns over quality of care allegedly resulted in Plaintiff's denial of adequate medical care. For example, Wexford required a member of the prison's medical staff to respond to medical grievances, but Wexford understaffed the HCU and made it difficult for these individuals (Administrator Gail Walls and Doctor Trost) to address Plaintiff's grievances (*id*. at 27). Wexford also had a policy of denying requests for outside referrals, diagnostic testing, and treatment (*id*. at 33). As a result, his old foot injury was not treated (*id*.). Finally, Wexford instituted a policy requiring inmates to visit the HCU three times before seeing a doctor, resulting in the delay or denial of adequate medical care (*id*. at 35).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to reorganize the claims in Plaintiff's *pro se* complaint into the following enumerated counts:

> **Count 1:** **Lieutenant Richard used excessive force against Plaintiff on September 24, 2014, in violation of the Eighth Amendment's proscription against cruel and unusual punishment.**
>
> **Count 2:** **Lieutenant Richard is liable for the intentional infliction of emotional distress against Plaintiff under Illinois law arising from the use of excessive force against him on September 24, 2014.**
>
> **Count 3:** **Lieutenant Richard, C/O John Doe 1, C/O Brookman, C/O Hart, Warden Butler, Director Godinez, and Ex-Director Stolworthy deprived Plaintiff of a protected liberty interest without due process of law in violation of the Fourteenth Amendment when they punished him with three months of segregation following an unfair disciplinary hearing in September 2014.**

| | |
|---|---|
| **Count 4:** | **Lieutenant Richard, Warden Butler, Director Godinez, and Ex-Director Stolworthy subjected Plaintiff to unconstitutional conditions of confinement in violation of the Eighth Amendment when they placed him in segregation for three months at Menard in 2014.** |
| **Count 5:** | **Grievance Officer John Doe 2, Mailroom Supervisor John Doe 3, Warden Butler, Director Godinez, and Ex-Director Stolworthy denied Plaintiff access to the courts by preventing him from using the prison mail system to exhaust his administrative remedies.** |
| **Count 6:** | **Lieutenant Richard, Nurse Jane Doe 1, Director Godinez, Warden Butler, Doctor Trost, HCU Administrator Walls, and Wexford exhibited deliberate indifference toward Plaintiff's medical needs in violation of the Eighth Amendment.** |
| **Count 7:** | **Defendants retaliated against Plaintiff for assaulting a Menard official in 2012 by engaging in the conduct described in the complaint.** |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding the merits of these claims.

As discussed in more detail below, the Court will allow the following claims to proceed: **Count 1** against Lieutenant Richard; **Count 3** against Lieutenant Richard, C/O Brookman, and C/O Hart; and **Count 4** against Lieutenant Richard. **Counts 2, 5, 6** and **7** shall be dismissed against all of the defendants.

<u>Claims Subject to Further Review</u>

**Count 1 – Excessive Force**

The complaint states a plausible excessive force claim against Lieutenant Richard. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment that violates the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). When considering whether

the allegations state an excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Davis v. Wessel*, 792 F.3d 793, 804 (7th Cir. 2015) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). The allegations suggest that Lieutenant Richard acted "maliciously and sadistically to cause harm" when twisting Plaintiff's cuffs and choking him without provocation on September 24, 2014. Accordingly, Count 1 is subject to further review against Lieutenant Richard. This claim shall be dismissed with prejudice against all other defendants because no one else is identified in connection with the claim.

### Count 3 – Due Process

The complaint also articulates a viable due process claim against Lieutenant Richard for his role in issuing Plaintiff a false disciplinary ticket and against C/O Brookman and C/O Hart for their role in denying him a fair disciplinary hearing in September 2014. Although allegations of a false disciplinary report do not state a claim where due process is afforded, Plaintiff alleges that he was denied due process at his hearing. *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994) aff'd, 70 F.3d 117 (7th Cir. 1995) *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984).

The procedural requirements for a disciplinary hearing generally protect prisoners from arbitrary actions of prison officials. *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987). An inmate facing disciplinary charges must be given: (1) advance written notice of the charges against him; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). In addition, the decision

of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). The allegations suggest that C/O Brookman and C/O Hart may have violated the procedural safeguards described in *Wolff* at Plaintiff's disciplinary hearing by denying his request to call witnesses. Plaintiff was therefore unable to challenge the false disciplinary ticket issued by Lieutenant Richards.

No right to due process is triggered in the first place, however, unless Plaintiff suffered a deprivation of a protected liberty interest. A liberty interest arises if Plaintiff's confinement in segregation "imposed an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Court considers two factors in this analysis: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original)). Plaintiff specifically claims that he was punished with three months of segregation under conditions that were allegedly unconstitutional[1] (Doc. 1-1, p. 3). Given the allegations describing the conditions of Plaintiff's confinement, the Court finds that the complaint states a Fourteenth Amendment claim against those individuals who were directly involved in the issuance of the disciplinary ticket and due process violations at Plaintiff's hearing, *i.e.*, Lieutenant Richard, C/O Brookman, and C/O Hart. Count 3 shall proceed against these individuals.

However, this claim is dismissed without prejudice against the other defendants named in connection with Count 3, *i.e.*, C/O John Doe 1, Warden Butler, Director Godinez, and Ex-

---

[1] Plaintiff's demotion to C-grade status and loss of commissary privileges do not give rise to a claim under the Fourteenth Amendment. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges). Therefore, this discussion focuses on his punishment with segregation.

Director Stolworthy. The allegations against these defendants are undeveloped. They do not suggest that these defendants were directly involved in a constitutional violation or even knew about it in time to take any sort of corrective action. Accordingly, Count 3 is dismissed without prejudice against C/O John Doe 1, Warden Butler, Director Godinez, and Ex-Director Stolworthy.

Further, this claim is dismissed with prejudice against those defendants who are not named in connection with Count 3 at all, including C/O John Doe 2, C/O John Doe 3, Nurse Jane Doe 1, Doctor Trost, Administrator Walls, and Wexford.

### Count 4 – Conditions of Confinement

The complaint also supports a claim against Lieutenant Richard for subjecting Plaintiff to unconstitutional conditions of confinement. An Eighth Amendment violation occurs in this context when an inmate suffers a "denial of the 'minimal civilized measure of life's necessities'" (*i.e.*, an objective standard), and a prison official is deliberately indifferent to this state of affairs (*i.e.*, a subjective standard). *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Claims arise in situations that include a lack of heat, clothing, and sanitation, among others. *Gray*, 826 F.3d at 1005 (citing *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006)). In addition, "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Id.* An adverse condition of confinement occurring over a sustained time period may also support an Eighth Amendment claim, even if it would not support a claim when occurring for a short time. *Id.* (citing *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997)).

The conditions described in the complaint satisfy both components of this claim against Lieutenant Richard. No other defendant is named in connection with this claim.[2] Accordingly, Count 4 is subject to further review against Lieutenant Richard, and this claim shall be dismissed with prejudice against all other defendants.

### Claims Subject to Dismissal

### Count 2 – IIED

The complaint supports no claim against Lieutenant Richard for intentional infliction of emotional distress under Illinois state law. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), as long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Plaintiff's claim against Lieutenant Richard for intentional infliction of emotional distress arises from the same facts that give rise to his excessive force claim. The Court therefore has supplemental jurisdiction over the claim.

However, the complaint offers insufficient allegations in support of this claim. Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must

---

[2] The unnamed officer mentioned in connection with this claim is not listed as a defendant in the case caption of the complaint. This claim is therefore considered dismissed without prejudice against this individual. *Myles*, 416 F.3d at 551-52.

either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E. 2d 745, 749 (Ill. App. 1993)). Whether conduct is extreme and outrageous is judged by an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

In the complaint, Plaintiff does not describe any symptoms of emotional distress or efforts to seek treatment for it. His allegations are, at best, bald and conclusory. The third element of this claim is not satisfied. Accordingly, Count 2 shall be dismissed without prejudice against Lieutenant Richard and dismissed with prejudice against all other defendants.

### Count 5 – Court Access

The complaint does not support a claim against any of the defendants for denying Plaintiff access to the Courts. Whether free or incarcerated, individuals have a right to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). "Meaningful access to the courts is a fundamental constitutional right, grounded in the First Amendment right to petition and Fifth and Fourteenth Amendment due process clauses." *Id.* at 291 (quoting *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (holding that prison mailroom's intentional delay of an IFP motion that resulted in the dismissal of a state appeal in a civil action stated a claim for denial of court access).

However, all claims require a showing of actual substantial prejudice to specific litigation. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff does not identify a single claim that was lost because of the delays in the mailroom's processing of his mail and grievances. Instead, Plaintiff alleges that understaffing in the mailroom prevented him from timely appealing his grievances and exhausting his administrative remedies before filing suit. These allegations support no claim. The Seventh Circuit has made it clear that "[w]hen a prisoner follows proper procedures and prison officials are responsible for mishandling his grievance, . . . [it cannot be said] that the prisoner has failed to exhaust his administrative remedies." *Smith v. Buss*, 364 Fed. Appx. 253 (7th Cir. 2010) (citing *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006)). In other words, administrative remedies are deemed "unavailable" under such circumstances, and an inmate is excused from the exhaustion requirement.

Moreover, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The Constitution requires no procedure at all, and the failure of state prison officials to

follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). In other words, the alleged mishandling of Plaintiff's grievances by the mailroom staff and/or grievance officers, absent any personal involvement in a constitutional deprivation, states no claim for relief under the First or Fourteenth Amendments. Accordingly, Count 5 shall be dismissed against the defendants with prejudice.

### Count 6

The complaint does not support an Eighth Amendment claim against any of the defendants for denying Plaintiff medical care for a serious medical need. A prison official violates the Eighth Amendment right to be free from cruel and unusual punishment when he or she exhibits deliberate indifference to an inmate's serious medical needs. *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In order to state a claim, the complaint must suggest that the plaintiff's medical need was sufficiently serious (*i.e.*, an objective standard) and that state officials acted with deliberate indifference to the medical need (*i.e.*, a subjective standard). *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

Plaintiff mentions numerous untreated injuries in the complaint, including scratches, a sore neck, symptoms of dehydration, and possible nerve damage caused by an old gunshot wound. However, he fails to describe any single injury with enough detail to support the objective component of this claim. He instead devotes a significant portion of his complaint to the deliberate indifference component of this claim. In the end, the complaint falls short of suggesting that Plaintiff suffered from a serious medical need. "A medical condition is serious if it 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay

person would perceive the need for a doctor's attention.'" *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005). None of the injuries described in the complaint satisfy this standard. Without more, the Court cannot find that Plaintiff suffered from a serious medical need that required any sort of treatment by the defendants. Accordingly, Count 6 shall be dismissed against all of the defendants without prejudice for failure to state a claim upon which relief may be granted.

### Count 7 – Retaliation

Finally, the Court finds that the complaint supports no retaliation claim against the defendants. In the prison context, where an inmate is alleging retaliation, the inmate must identify the reasons for the retaliation, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). He must have engaged in some protected First Amendment activity (*e.g.*, filing a grievance or otherwise complaining about conditions of confinement), experienced an adverse action that would likely deter such protected activity in the future, and must allege that the protected activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

Plaintiff alleges that the defendants retaliated against him in 2014 because he assaulted a Menard official two years earlier. Plaintiff's assault on a prison guard is not considered protected First Amendment activity. "[A] physical assault is not by any stretch of the imagination expressive conduct protected by the First Amendment." *Wisconsin v. Mitchell*, 508 U.S. 476, 484 (1993) ("[P]rotected activity" under the First Amendment does not include assault or battery against an officer); *McElroy v. Unknown Parties*, No. 14-cv-01020, 2014 WL 5396172, at *2 (S.D. Ill. Oct. 21, 2014) (dismissing claim because "restraining guard" and

"physical assault" are not activities "protected under the First Amendment"). Plaintiff's assault of a prison guard cannot support a First Amendment retaliation claim against any of the defendants, and Count 7 shall be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Prison Transfer Request

In his request for relief, Plaintiff seeks a prison transfer because he fears retaliation by Menard officials. Plaintiff's request for a prison transfer is subject to denial at this time. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). Plaintiff has not filed a separate motion requesting a temporary restraining order or a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. He does not seek relief under Rule 65 in his complaint. Further, he describes no recent conduct that would support such a request. For example, he does not complain about recent acts of retaliation by prison officials, recent deprivations of his constitutional rights, or problems with his current conditions of confinement. Under the circumstances, his request for a prison transfer is **DENIED** without prejudice. Plaintiff may renew his request by filing a motion pursuant to Rule 65 at any time he deems it necessary to do so during the pending action.

### Disposition

**IT IS HEREBY ORDERED** that any claims not addressed in this Order are considered **DISMISSED** without prejudice. Likewise, claims against individuals who are not named as defendants in this action are **DISMISSED** without prejudice.

**IT IS ALSO ORDERED** that **COUNTS 1, 2,** and **4** are **DISMISSED** with prejudice against all of the defendants except Defendant **STEVEN RICHARD**; **COUNT 3** is **DISMISSED** without prejudice against Defendants **JOHN DOE 1, KIMBERLY BUTLER, SALVADOR GODINEZ,** and **DONALD STOLWORTHY**, and **COUNT 3** is **DISMISSED** with prejudice against Defendants **JOHN DOE 2, JOHN DOE 3, JANE DOE 1, TROST**, and **GAIL WALLS**; **COUNT 2** is **DISMISSED** without prejudice against Defendant **STEVEN RICHARD**; **COUNTS 5** and **7** are **DISMISSED** with prejudice against all of the defendants; and **COUNT 6** is **DISMISSED** without prejudice against all of the defendants.

**IT IS FURTHER ORDERED** that **COUNT 1** shall receive further review against Defendant **STEVEN RICHARD**; **COUNT 3** shall receive further review against Defendants **STEVEN RICHARD, KENT BROOKMAN**, and **JASON HART**; and **COUNT 4** shall receive further review against Defendant **STEVEN RICHARD**.

With regard to **COUNTS 1, 3,** and **4**, the Clerk shall prepare for Defendants **STEVEN RICHARD, KENT BROOKMAN**, and **JASON HART**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if

not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give

security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 21, 2016**

**s/ MICHAEL J. REAGAN**
**U.S. District Judge**